David S. Norris (AZ Bar No. 034309)
david.norris@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
1 East Washington Street, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 528-4000
Facsimile: (602) 253-8129

Eric J. Troutman (*pro hac vice*)
eric.troutman@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California  90071
Telephone: (213) 624-2500
Facsimile: (213) 623-4581

*Attorneys for Defendant loanDepot.com, LLC*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Winters Jr., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LoanDepot, LLC,<br><br>Defendant. | Case No. CV-20-01290-PHX-SPL<br><br>**DEFENDANT LOANDEPOT.COM, LLC'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE, TO STAY PENDING THE NINTH CIRCUIT'S REVIEW OF** ***CHENNETTE*****, NO. 20-35962** |

Defendant loanDepot.com, LLC ("loanDepot") respectfully moves this Court for an order dismissing Plaintiff Richard Winters Jr.'s ("Plaintiff") Second Amended Complaint ("SAC") [ECF No. 27] pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and this Court's November 17, 2021 Order [ECF No. 42][1], on the grounds that the Telephone Consumer Protection Act ("TCPA") is an unconstitutional statute and loanDepot

---

[1] The Court previously granted in part loanDepot's similar yet distinct motion [ECF No. 28] and granted a stay of proceedings pending the Ninth Circuit's decision in *Perez v. Rash Curtis & Assoc.*, No. 20-15946. On November 11, 2021, the Ninth Circuit entered an Order dismissing the appeal in *Perez* [ECF No. 57] pursuant to a stipulation of settlement filed by the parties; the Ninth Circuit did not address the constitutionality of the TCPA. loanDepot files the current responsive pleadings pursuant to the Court's Order [ECF No. 40].

cannot be held liable for conduct that occurred under it. In the alternative, loanDepot respectfully requests that this Court stay proceedings pending the Ninth Circuit's resolution of *Chennette v. Porch.com, Inc.*, No. 20-35962.

## MEMORANDUM OF POINTS AND AUTHORITIES

As detailed below, the TCPA is unconstitutional, both when the alleged calls occurred and to this day, and Plaintiff's SAC should be dismissed. In the alternative, this litigation should be stayed pending the Ninth Circuit's resolution of *Chennette*, 20-35962, as the Ninth Circuit is considering the constitutionality of the TCPA during the period in which Plaintiff alleges loanDepot called him.

## INTRODUCTION

When the TCPA was implemented in 1991, Congress found that "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that protects the privacy of individuals and permits legitimate telemarketing practices." [TCPA] of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (codified at 47 U.S.C. § 227). But this balance was not achieved, resulting instead in an overly broad statute that regulated a wider variety of calls than was ever needed to protect consumer privacy. A number of content-based exemptions were included or added to try to trim it down to size, but these exemptions do not pass strict scrutiny and cannot be severed. Because the TCPA is an unconstitutional law, loanDepot cannot be held liable for conduct that allegedly occurred under it.

The Supreme Court struck down one of the unconstitutional exemptions (the government-backed debt exemption), *see Barr v. AAPC*, 140 S. Ct. 2335, 2346 (2020), and several courts have since found that the TCPA remained unconstitutional between 2015 (when that exemption was added) and July 2020 (when it was struck down). *See, e.g.*, *Cunningham v. Matrix Fin. Servs.*, 2021 U.S. Dist. LEXIS 62875, at \*30-31 (E.D. Tex. Mar. 31, 2021); *Creasy v. Charter Communs., Inc.*, 489 F. Supp. 3d 499, 508 (E.D. La. 2020).[2]

---

[2] Although loanDepot recognizes that some courts have reached the opposite conclusion, those decisions misconstrue and conflict with Supreme Court precedent and were incorrectly decided, as explained more fully *infra*.

- 2 -

The Ninth Circuit will soon clarify the emerging split among district courts in its forthcoming decision in *Chennette v. Porch.com, Inc.*, No. 20-35962. In *Chennette*, the appellee maintains that appellant failed to state a claim under the TCPA in part because the statute was unconstitutional at the time the alleged conduct occurred. Br. for Appellees at 39-41, *Chennette*, No. 20-35962 [ECF No. 24] (9th Cir. May 5, 2021). Thus, in the event that the Court is not inclined to dismiss this action, in the alternative, loanDepot requests that the Court stay proceedings pending guidance from the Ninth Circuit.

## BACKGROUND

**I.     The Present Action.**

Plaintiff claims that loanDepot violated the TCPA when it allegedly made one unsolicited call in October 2018 to Plaintiff's cell phone. *Id.* ¶ 7.[3] Plaintiff alleges that loanDepot used "an artificial or prerecorded voice" as defined by 47 U.S.C. § 227 (b)(1) in placing this call. *See id.* ¶¶ 8, 12. Based on this purported call, Plaintiff also asks the Court to certify a nationwide class for an alleged violation of the TCPA based on purportedly pre-recorded voice calls in violations of the automated dialing ban provisions. *Id.* ¶¶ 13.

**II.    The Supreme Court Found the TCPA Unconstitutional, and Severed One Exemption, but Did Not Reach A Majority on Liability for Pre-Severance Calls.**

Before Plaintiff filed the instant action, the Supreme Court held that the TCPA was a content-based restriction that violated the First Amendment. *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2346 (2020) ("*AAPC*"). On July 6, 2020, the Supreme Court in *AAPC* held that the government-backed debt exception—added in 2015— impermissibly treated speech to collect a debt issued or guaranteed by the federal government more favorably than other forms of speech, in violation of the First Amendment. 140 S. Ct. at 2343, 2347. The Court severed the government-backed debt exemption prospectively, but did <u>not</u> reach a majority as to the effect of severance on calls

---

[3] The true facts—which need not be decided at this time—are that loanDepot placed this single call to the number at issue only because Plaintiff (or someone purporting to be Plaintiff) supplied accurate contact information on a website seeking information about loanDepot's products. *See* Decl. of Rod Halperin in Support of loanDepot's Mot. to Dismiss for Lack of Personal Jurisdiction [ECF No. 19-1] ¶ 5.

that occurred before the Court's decision. *Id.* at 2343. In a footnote ("footnote 12") which only two other Justices joined, Justice Kavanaugh stated: "On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *Id.* at 2355 n.12. Justices Thomas and Gorsuch disagreed and characterized this footnote as a non-binding suggestion. *See id.* at 2363, 2366-67.

While post-*AAPC* district court decisions have split, several have concluded, as the Court should here, that courts cannot enforce the TCPA's automated call restriction during the period the statute was unconstitutional. *See, e.g.*, *Creasy*, 489 F. Supp. 3d at 503.

## **LEGAL STANDARD**

Dismissal is proper under Rule 12(b)(1) when a court lacks subject-matter jurisdiction. A Rule 12(b)(1) motion may be presented as either a facial or factual challenge to the court's subject-matter jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Although "the Court accepts as true all factual allegations and construes the pleadings in the light most favorable to the plaintiff," *Nat'l Coalition for Men v. Selective Serv. Sys.*, 2016 U.S. Dist. LEXIS 197361, at *1-2 (C.D. Cal. Nov. 9, 2016), the burden is on the plaintiff to establish subject-matter jurisdiction, *Bishop Paiute Tribe v. Inyo County*, 863 F.3d 1144, 1151 (9th Cir. 2017).

Federal courts lack subject-matter jurisdiction over unconstitutional statutes because "a law repugnant to the constitution is void." *Marbury v. Madison*, 5 U.S. 137, 180 (1803); *see also Ex parte Siebold*, 100 U.S. 371, 376 (1879) (an unconstitutional law is "void, and is as no law"); *United States v. Baucum*, 80 F.3d 539, 540-41 (D.C. Cir. 1996) ("It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce).") (per curiam).

Furthermore, a complaint that "fail[s] to state a claim upon which relief can be granted" is subject to dismissal under Rule 12(b)(6). Under this rule, a complaint should be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## ARGUMENT

### I. The SAC Should Be Dismissed Because the TCPA Is—and Was—Unconstitutional, and Thus Cannot Be Enforced against loanDepot.

This Court should dismiss Plaintiff's SAC with prejudice for lack of subject-matter jurisdiction and for failure to state a claim because the TCPA was unconstitutional when the alleged calls occurred and remains unconstitutional to this day.

#### A. The SAC Should Be Dismissed Because the TCPA Was Unconstitutional at the Time of the Alleged Calls at Issue.

Plaintiff's SAC should be dismissed because the TCPA was unconstitutional between the enactment of the government-debt exemption in 2015 and the Supreme Court's severance of the exemption on July 6, 2020. *See, e.g.*, *Creasy*, 489 F. Supp. 3d at 504.

##### 1. The Post-*AAPC* Split and the Ninth Circuit's Forthcoming Decision in *Chennette*.

A split among district courts across the nation has emerged on the critical question of whether severance of the government-debt exemption in *AAPC* applies retroactively.[4] Several courts have concluded that courts cannot enforce the TCPA's automated call restriction during the period the statute was unconstitutional. *See Cunningham*, 2021 U.S. Dist. LEXIS 62875, at *30-31; *Creasy v. Charter Communs*, 489 F. Supp. 3d at 504. Other courts, however, have reached the opposite conclusion and assert that courts continue to retain jurisdiction over claims concerning calls that occurred prior to July 6, 2020. *See, e.g.*,

---

[4] loanDepot acknowledges that the Sixth Circuit recently held in *Lindenbaum v. Realgy, LLC*, No. 20-4252 (6th Cir. Sept. 9, 2021), that the TCPA may be enforced between the enactment of the government-debt exemption in 2015 and its severance in 2020. However, loanDepot respectfully submits that *Lindenbaum* was wrongly decided for the reasons articulated herein, and the Ninth Circuit has not yet decisively ruled on this critical issue.

- 5 -

*Shen v. Tricolor Cal. Auto. Grp., LLC*, 2020 U.S. Dist. LEXIS 237582, at *13 (C.D. Cal. Dec. 17, 2020).

The Ninth Circuit will soon become one of the first Courts of Appeals to address this question and has the opportunity to clarify this critical issue following the Sixth Circuit's decision in *Lindenbaum*. In *Chennette*, plaintiffs, business owners who advertised their home improvement businesses with postings including their cell phone numbers, filed suit alleging that defendants had violated the TCPA in sending text messages to their cell phone numbers without their consent. Br. of Appellees at 1, *Chennette*, No. 20-35962 [ECF No. 24] (9th Cir. May 5, 2021). The district court granted defendants' motion to dismiss, finding that plaintiffs lacked standing to sue because their cell phones were business lines. *Id.* Appellees maintained that appellants had failed to state an ATDS claim in part because no federal subject matter jurisdiction existed because the TCPA's autodialer provision was unconstitutional when the alleged texts were received. *Id.* at 39. Therefore, in *Chennette*, the Ninth Circuit will address a question directly affecting loanDepot's liability in the present action: whether this Court can exercise jurisdiction over an alleged violation of the TCPA's § 227(b)(1)(A) in October 2018, when the TCPA was unconstitutional.[5]

### 2. Dismissal Is Appropriate Because the TCPA Was Unconstitutional When loanDepot Allegedly Called Plaintiff.

This Court should adopt the approach of the courts that have found that the TCPA was unconstitutional between 2015 and July 6, 2020 and conclude that courts cannot exercise jurisdiction over TCPA claims during the period the statute was unconstitutional.

A court "must [necessarily] consider the facial constitutionality of the [statute] in effect" at the time of the speech at issue. *Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972). It is axiomatic that a law "repugnant to the constitution" is unenforceable. *Marbury*, 5 U.S. at 138. As such, it would be highly improper—as Justices Thomas and Gorsuch observed— to hold loanDepot liable for calls that took place during a period of time in which the TCPA as a whole was unconstitutional. *See AAPC*, 140 S. Ct. at 2363.

---

[5] The parties in *Chennette* have completed briefing, and the Ninth Circuit heard oral argument in October 2021. *See Chennette*, 20-35962 [Dkt. No. 48].

- 6 -

"[J]udicial severance of one portion of an unconstitutional statute is, by necessity, only applicable prospectively." *Arthrex, Inc. v. Smith & Nephew*, 953 F.3d 760, 767 n.2 (Fed. Cir. 2020). It is a "forward looking judicial-fix." *Id.* at 766-67 ("Our decision that the statute can be rendered constitutional by severance does not remedy any past harm—it only avoids continuing harm in the future. It is only meaningful prospectively, once severance has occurred."); *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1699 n.24 (2017) (a "defendant convicted under a law classifying on an impermissible basis may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity"); *United States v. Booker*, 543 U.S. 220, 267 (2005).

*AAPC* did not hold otherwise, and to the extent severance in *AAPC* functions to "remedy" a "harm," it is only suitable prospectively. That is because the "harm" experienced by Defendant was the outlaw of "constitutionally protected speech . . . while Congress affirmatively blessed robocalls of other content in violation of the First Amendment." *Creasy*, 489 F. Supp. 3d at 507-08. Applying the post-severance statute retroactively would not remedy this harm—it would aggravate it.

Here, Plaintiff alleges that loanDepot made one call to his cell phone in October 2018, and does not allege any other calls occurred. *See* SAC ¶¶ 7-8. Thus, the only alleged TCPA violation occurred when the TCPA was unconstitutional. *See AAPC*, 140 S. Ct. at 2346. This Court therefore lacks subject-matter jurisdiction because "there is no valid 'law of the United States' to enforce." *Baucum*, 80 F.3d at 541-42.

District court decisions reaching the opposite conclusion are not controlling and do not warrant a different result here. *First*, some of the cases misconstrue the Ninth Circuit's decision in *Facebook*. In *Shen*, for example, the court found it "persuasive" that the Ninth Circuit "invalidated the government debt exception as violative of the First Amendment as a content-based restriction on speech, but severed the exception from the remainder of § 227(b)(1)(A)(iii) and *remanded for further proceedings to resolve claims that included calls made after the 2015 enactment of the government debt exception*." 2020 U.S. Dist. LEXIS 237582, at *11 (emphasis added). But the Ninth Circuit *had to* remand the case for further

proceedings so that the district court could consider calls that pre-dated the 2015 government-debt exemption. Furthermore, *Shen* mistakenly implies that, through its remand order, the Ninth Circuit condoned the enforcement of the TCPA as to calls made between 2015 and July 6, 2020. But the Ninth Circuit did no such thing—it remanded the case without any instructions as to how post-November 2015 calls should be treated.

*Second*, many of the cases rely on footnote 12 of the *AAPC* plurality opinion, but reliance on this footnote, which is not binding and does not mandate a different result, is misplaced. "For starters, footnote twelve is, by definition, dictum." *Cunningham*, 2021 U.S. Dist. LEXIS 62875, at *19; *see also Creasy*, 489 F. Supp. 3d at 506 n.4. Only three Justices joined the footnote, and as Justices Gorsuch and Thomas confirmed, *AAPC* did not address whether severance of the government debt exception applies retroactively.

In fractured opinions such as *AAPC*, "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977). The plurality in *AAPC* spelled out the "narrowest grounds" that commanded majorities: six members agreed that the TCPA, as written, violated the First Amendment, and seven members agreed that the government-backed debt exception should be severed. *AAPC*, 140 S.Ct. at 2343. Those two holdings—and only those two holdings—bind this Court. *See, e.g.*, *Creasy*, 489 F. Supp. 3d at 505. Accordingly, footnote 12 constitutes mere dicta and is not precedential.

*Third*, even acknowledging footnote 12 as dicta and non-binding, any reading of the footnote as "persuasive" justification for exercising jurisdiction flies in the face of clear Supreme Court precedent. *But see, e.g.*, *Shen*, 2020 U.S. Dist. LEXIS 237582, at *4. Indeed, Justice Gorsuch warned his colleagues that failing to provide equal protection from the TCPA during its period of constitutional deficiency to all callers and not just government debt collectors "would wind up endorsing the very same kind of discrimination we say we are seeking to eliminate." *AAPC*, 140 S. Ct. at 2366; *see also Cunningham*, 2021 U.S. Dist. LEXIS 62875, at *20. This view is consistent with existing Supreme Court authority on the post-severance application of statutes that were previously unconstitutional, as written. *See,*

- 8 -

*e.g.*, *Grayned*, 408 U.S. at 107 n.2; *Sessions*, 137 S. Ct. at 1699 n.24. Footnote 12 does not overrule this authority, nor could it.[6] At bottom, because retroactive severance would "endors[e] the very same kind of content discrimination" that the plurality sought to eliminate, *AAPC*, 140 S. Ct. at 2366 (Gorsuch, J.), dismissal is the "constitutionally dictated result." *Creasy*, 489 F. Supp. 3d at 508.

### B.  The TCPA Remains Facially Unconstitutional Even After *AAPC* Due to the Presence of Numerous Content-Specific Exemptions.

Even if this Court declines to find that the TCPA was unconstitutional between 2015 and July 6, 2020, Plaintiff's SAC should be dismissed because the TCPA was, and is, a facially unconstitutional statute that does not survive strict scrutiny. *AAPC*'s severance of the government-debt exemption clearly demonstrated that content-specific exemptions to the TCPA raise major constitutional infirmities and must be addressed. The TCPA's multiple content-based exemptions that were *not* raised or considered in *AAPC* are overly broad, violate the First Amendment, and cannot be severed to save the statute.

#### 1.  The TCPA Remains Riddled with Content-Specific Exemptions.

The text of the TCPA, and the FCC's implementation of it, contain numerous content-based restrictions that were not severed (or addressed) in *AAPC*. These include exemptions for: i) emergency calls;[7] ii) "autodialed or prerecorded message calls by a wireless carrier to its customer when the customer is not charged";[8] iii) certain healthcare-related calls;[9] iv) certain package-delivery notifications;[10] v) schools to communicate with students and parents;[11] and vi) certain messages by banks pertaining to fraud.[12] Additionally, the requirement of a higher level of consent for calls made for a marketing purpose rather than calls made for an informational purpose creates another a content-based

---

[6] For the same reasons, any attempt to independently reach the same conclusion as footnote 12 also misses the mark and contravenes this clear Supreme Court authority.
[7] 47 U.S.C. § 277(b)(1)(A) (emergency calls).
[8] 77 Fed. Reg. 34233, 34236 (June 11, 2012).
[9] 47 C.F.R. § 64.1200(a)(3)(v).
[10] *In re Cargo Airline Ass'n*, 29 FCC Rcd 3432, 3437-3438 (2014).
[11] *In re Rules & Regs. Implementing [TCPA] of 1991*, CG Docket No. 02-278, FCC 16-88 (Aug. 4, 2016).
[12] 30 FCC Rcd 7961, 8025 (2015).

distinction.[13] Like the government-backed debt exemption at issue in *AAPC*, each and every one of these exemptions renders the TCPA an unconstitutional content-specific restriction on speech. *AAPC*, 140 S. Ct. at 2347; *Reed v. Town of Gilbert*, 576 U.S. 155, 162 (2015).

### 2. The Content-Based Exemptions Do Not Survive Strict Scrutiny.

To determine if a content-based restriction withstands strict scrutiny, the reviewing court "must identify with care the interests the State itself asserts" and may not "supplant the precise interests put forward by the State with other suppositions." *Edenfield v. Fane*, 507 U.S. 761, 768 (1993). The burden is on the party defending a content-based restriction to advance evidence that the harms Congress identified are real. *Id.*; *Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n*, 447 U.S. 530, 543 (1980) ("Mere speculation of harm does not constitute a compelling state interest."). In *AAPC*, the Supreme Court recently that "collecting government debt"—though a "worthy goal"—"cannot satisfy strict scrutiny." 140 S. Ct. at 2347.

Similarly, none of the other content-based exemptions remaining in the TCPA can survive strict scrutiny. Even the "emergency purposes" exemption, which comes closest, is so ephemeral as to remain both an under- and over-inclusive restriction on speech. *See* 47 U.S.C. § 227(b)(1)(A)(iii). The others do not come close. While many of the FCC's exemptions—i.e., healthcare, package delivery, or fraud notification messages—look at "urgency" or the need for "time sensitive" communication, they can hardly be considered "narrowly tailored" to a "compelling" governmental interest. *See Reed*, 576 U.S. at 163.

### 3. The TCPA's Additional Content-Based Exemptions Cannot Be Severed to Save the Statute as Applied to loanDepot.

While *AAPC* forecloses any argument that the TCPA is unconstitutionally applied due to the single content-based exemption addressed in that case, nothing in the *AAPC* ruling mandates that a statute containing *numerous* content-based exemptions should always survive constitutional scrutiny. In order to save the TCPA, this Court would have to sever the *seven* separate exemptions discussed above. The Court severed the single

---

[13] 30 FCC Rcd at 7968.

- 10 -

exemption in *AAPC* in recognition that Congress likely intended that result, since that exemption was added late in the statute's life. *See* 140 S. Ct. at 2356. But many of the TCPA's other content-specific exemptions have existed for much longer and have persisted through multiple amendments to the statute.[14] There is no basis to conclude that Congress's intent would be to uphold the TCPA if its provisions were applied with complete uniformity to marketers and debt collectors on the one hand and schools, hospitals, and delivery companies, and banks delivering fraud notifications on the other.

Moreover, there remains significant doubt that this Court could sever the TCPA exemptions even if it wanted to, as the Hobbs Act appears to deprive courts of jurisdiction to sever FCC exemptions.[15] If the exemptions cannot be severed, the statute is unconstitutional due to its numerous content-based restrictions that do not survive strict scrutiny, and cannot be saved.

loanDepot submits that the proper course is to scrutinize the great breadth of the TCPA's restrictions on use of a prerecorded voice itself to determine whether the statute can be constitutionally applied. Here, as demonstrated by its numerous carve-outs, the TCPA is not narrowly tailored to a compelling government interest, but is fashioned extremely broadly to cover both *wanted* and *unwanted* calls alike.[16] These carve-outs do not further the underlying purpose of the statute—to protect consumer privacy—but rather reflect that certain calls regulated by the statute *did not infringe upon that interest to begin with*.

*AAPC* squarely compels a determination that the TCPA's numerous content-based exemptions must be struck down unless they survive strict scrutiny, which they do not.

---

[14] The TCPA was amended in 2003 and again in 2015. *See* CG Docket No. 02-278, FCC 03-153; Bipartisan Budget Act of 2015, Pub. L. No. 114-74, 129 Stat. 584; *see, e.g.*, 77 Fed. Reg. at 34235.

[15] Although the application of the Hobbs Act as a bar to judicial review of agency action was in some doubt following the Supreme Court's ruling in *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2054-56 (2019), this and other courts have noted that litigators "cannot place much reliance on the opinion, because all it did was remand the case to the lower courts in order to address two 'preliminary issues,'" and "the Seventh Circuit instructs that district courts must presume the agency actions are 'valid.'" *Ind. R.R. Co. v. Ill. Commerce Comm'n*, 491 F. Supp. 3d 344, 349-50 (N.D. Ill. 2020) (quoting *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 449 (7th Cir. 2010)).

[16] While the statute affords a defense for "consented" calls, *see* 47 U.S.C. § 227(b)(1)(A), not all uninvited calls are unwanted, or vice versa.

- 11 -

loanDepot, therefore, is entitled to one of two remedies: i) either all of the TCPA's content-based restrictions must be struck down and the statute must be expanded to apply uniformly to all speech made using an ATDS or prerecorded voice; or ii) the TCPA's entire ATDS and prerecorded voice restriction must be struck down as an overly broad and unconstitutional restriction on speech. In the absence of any evidence that Congress would want the restrictions of the TCPA to apply so broadly—and given the Court's likely lack of jurisdiction to sever FCC exemptions under the Hobbs Act—loanDepot submits that the second course is the most prudent and appropriate.

## II. In the Alternative, this Case Should Be Stayed Pending the Ninth Circuit's Decision in *Chennette*.

In the event that the Court does not dismiss this matter under Rules 12(b)(1) and/or 12(b)(6), in the alternative, this Court should stay proceedings pending clarification on the viability of Plaintiff's claims from the Ninth Circuit in *Chennette*.

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005). "[T]he decision to grant a stay [. . .] is generally left to the sound discretion of district courts." *Ryan v. Gonzales*, 568 U.S. 57, 74 (2013) (citation omitted). Courts in Arizona weigh the following factors to determine whether to stay: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward" with the case in the event it is not stayed, and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *In re Sprouts Farmers Mkt.,* 2017 U.S. Dist. LEXIS 80323, at *4-5 (D. Ariz. May 24, 2017). A court may also consider whether it is "efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the

case." *Ctr. for Biological Diversity v. U.S. Dep't of the Interior*, 255 F. Supp. 2d 1030, 1036 (D. Ariz. 2003) (quoting *Leyva v. Certified Grocers of Cal.*, 593 F.2d 857, 863-4 (9th Cir. 1979)). A stay may be granted if "it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva*, 593 F.2d at 864. Weighing the above factors in this case demonstrates that, if the Court does not dismiss the case, a stay is appropriate.

### A.  Plaintiff and the Punitive Class Will Suffer No Harm From a Stay.

The first factor warrants the issuance of a stay because Plaintiff would face little or no prejudice from a stay.

*First*, there is no risk of ongoing harm to Plaintiff. The SAC does not allege that Plaintiff continues to receive unsolicited calls, or that loanDepot has made *any* calls since the one call in October 2018. This Court, previously concluded that a stay pending *Facebook* "would not prejudice Plaintiff," and as before, Plaintiff again "only seeks injunctive relief to the extent that it would prevent Defendant from engaging in 'such conduct in the future,' not to the extent that it would enjoin Defendants from any present behavior causing ongoing harm." Order [ECF No. 23] at 2; *see also* Order [ECF No. 40] at 2-3 (staying action pending Ninth Circuit's review of *Perez*, No. 20-15946); *see also* SAC ¶¶ 27, 31. Other courts in this district have held that a similar lack of ongoing harm weighs in favor of issuing a stay. *See, e.g.*, *Head v. Citigroup Inc.*, 2020 U.S. Dist. LEXIS 198145, at *2 (D. Ariz. Sept. 22, 2020) (granting motion to stay pending the *Facebook* decision where the plaintiff was "no longer receiving automated calls" and sought "monetary damages, not injunctive relief"); *see also Pinchem v. Regal Med. Grp., Inc.*, 2017 U.S. Dist. LEXIS 180963, at *5 (C.D. Cal. Mar. 3, 2017) (finding no prejudice "because the calls to Plaintiff have ceased [and] the only issue to be tried is. . . liability and any damages owed for. . . previous calls.").

Second, there is no prejudice to Plaintiff or the class because the stay loanDepot seeks is not indefinite and is likely to be of short duration. The parties in *Chennette* have completed briefing and oral argument, and a forthcoming decision likely will not be far

behind. *See Chennette*, 20-35962 [Dkt. No. 49]. Courts in this Circuit, including this District, have stayed proceedings pending resolution of a case by the Supreme Court or the Ninth Circuit, finding that stays pending appellate review were not stays of indefinite duration. *See, e.g.*, *Berrow v. Navient Sols. LLC*, 2020 U.S. Dist. LEXIS 237011, at *5-6 (D. Ariz. Dec. 16, 2020) (staying TCPA case pending *Facebook* because a "short delay" of a matter of months "is not substantial enough to cause a hardship of Plaintiff's prosecution of this matter, as his evidence is unlikely to disappear in this short amount of time"); *Canady v. Bridgecrest Acceptance Corp.*, 2020 U.S. Dist. LEXIS 161629, at *10 (D. Ariz. Sep. 3, 2020) (finding stay pending *Facebook* "would only last until the Supreme Court issues a decision, which is a permissible end point").

*Third*, Plaintiff would not suffer any prejudice from the issuance of stay because the present proceeding is in its earliest stages. In considering a stay, courts consider "the stage in litigation, whether substantial discovery has already taken place, and whether the matter has been set for trial." *See, e.g.*, *Berrow v. Navient Sols. LLC*, 2020 U.S. Dist. LEXIS 237011, at *6 (D. Ariz. Dec. 16, 2020); *Sensibaugh v. Ef Educ. First*, 2020 U.S. Dist. LEXIS 113165, at *4 (C.D. Cal. May 7, 2020) (same). Here, Plaintiff filed his SAC on May 5, 2021, and the matter has been stayed pending *Perez v. Rash Curtis & Assoc.*, No. 20-15946 (9th Cir.), since July 1, 2021. No formal discovery has commenced, no discovery deadlines have been set, nor has a date for a scheduling conference been prescribed by the Court. Given that this case is still in its infancy, Plaintiff will not suffer any prejudice from the issuance of a stay.

### B. Without a Stay, loanDepot Will Face Hardship and Inequity.

The second factor also favors a stay because, without one, loanDepot would suffer harm if it were forced to proceed litigating this class action within the framework of an uncertain and potentially dispositive legal standard. Indeed, the Ninth Circuit's decision in *Chennette* will not only bear on loanDepot's alleged liability, it may moot any such liability entirely, as this Court previously observed in staying proceedings pending *Perez*. *See* Order [ECF No. 40] at 2-3. And, in doing so, loanDepot will face substantial expenses litigating

a case that may be rendered entirely inactionable by the Ninth Circuit's decision in *Chennette*. Plaintiff alleges that he received only one unsolicited call in October 2018, falling squarely in the period the TCPA was unconstitutional. *See* SAC ¶ 7. Therefore, if the Ninth Circuit concludes in *Chennette* that courts are not able to enforce the TCPA during the period the statute was unconstitutional, this Court will not be able to exercise jurisdiction over the claims alleged in the SAC.

Where a separate proceeding will control a defense in the matter sought to be stayed, failure to stay the proceedings constitutes an undue hardship. *See, e.g.*, *L.A. Printex Industries., Inc. v. Did Fabric, Inc.*, 2015 U.S. Dist. LEXIS 192550, at *2 (C.D. Cal. Nov. 17, 2015) (finding stay appropriate where resolution of state court proceedings "w[ould] control Defendants' defense in the instant action"). Indeed, a number of courts in the Ninth Circuit—including this Court—have issued stays for the *same reason* raised by loanDepot: pending the Ninth Circuit's review of challenges to the TCPA's constitutionality. *See, e.g.*, Order [ECF No. 40] at 2-3 (this Court granting stay pending outcome of *Perez*); *Camacho*, 2021 U.S. Dist. LEXIS 46145, at *8-9 (staying case pending the outcome of *Perez* and noting that "the cost of litigation may favor a stay in combination with other factors"); Order [ECF No. 23] (this Court granting stay pending outcome of *Duguid*); *Whittaker v. All Reverse Mortg., Inc.*, 2020 U.S. Dist. LEXIS 96833, at *2 (D. Ariz. May 29, 2020) (granting stay of TCPA suit pending *AAPC* as it "might dispose of the lawsuit, narrow Plaintiff's class, or at least provide relevant guidance to the Court); *Meza v. Sirius XM Radio, Inc.*, 2018 WL 4599718, at *5 (S.D. Cal. Sept. 25, 2018) (same).

Forcing loanDepot to proceed with this litigation and engage in potential class discovery while the constitutional validity of claims against it is in question, and where a forthcoming decision could dispose of Plaintiff's claims, would constitute a hardship and an inequity. For this additional reason, a stay pending the Ninth Circuit's decision in *Chennette* is appropriate.

**C. The Orderly Course of Justice Would Be Well Served by a Stay.**

The third factor—whether a stay would promote the orderly course of justice—also justifies a stay because *Chennette* will control this case. As one court recently held when granting a stay of a TCPA class action pending *Perez*—which similarly considered whether calls made while the TCPA was held unconstitutional can give rise to liability— "[a] decision by the Ninth Circuit on whether subject matter jurisdiction exists in this circumstance will certainly impact the current Motion to Dismiss for lack of subject matter jurisdiction," and "this factor [is] dispositive." *Camacho*, 2021 U.S. Dist. LEXIS 46145, at *8-9. Here, as in that case, "[s]taying this action, therefore, will allow the Court to avoid deciding a thorny issue of Constitutional law and, potentially, redoing months of litigation if the Ninth Circuit interprets that law differently." *Id.* at *8.

The Ninth Circuit has consistently held that the orderly administration of justice is served by staying matters "pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). And courts often find that this factor controls over any harm to Plaintiff. *See*, *e.g.*, *Mina v. Red Robin Int'l Inc.*, 2019 U.S. Dist. LEXIS 130880, at *8 (C.D. Cal. Apr. 2, 2019); *see also Fontes v. Time Warner Cable, Inc.*, 2018 U.S. Dist. LEXIS 227760, at *6 (C.D. Cal. Aug. 20, 2018) (stay would "simplify the issues in this case and conserve judicial resources" because "[t]he constitutionality of the amended TCPA is a novel question of law").

Here, the issue before the Ninth Circuit in *Chennette* bears directly on, and indeed may even be dispositive of, loanDepot's liability. If the Ninth Circuit concludes in *Chennette* that the TCPA was unconstitutional from November 2015 to July 2020, this Court would lack jurisdiction over the claims alleged in the SAC and the October 2018 call. Therefore, a stay of this proceeding until the Ninth Circuit's decision in *Chennette* will serve the orderly course of justice by allowing for the clarification of a potentially dispositive legal issue and avoiding the potentially unnecessary consumption of precious judicial resources in the interim. Indeed, just as before, discovery had not yet begun, and

"[s]taying the matter pending the *[Chennette]* decision will potentially absolve the need for complex discovery, potentially involving multiple class plaintiffs. *See* Order [ECF No. 27] at 3; *see also* Order [ECF No. 40] at 2-3. All three factors, including the orderly administration of justice, weigh in favor of granting a stay pending *Chennette.*

## CONCLUSION

For the foregoing reasons, loanDepot respectfully requests that the Court grant its Motion to Dismiss Plaintiff's Second Amended Complaint with prejudice. In the alternative, loanDepot requests that the Court stay proceedings pending the Ninth Circuit's decision in *Chennette*.

RESPECTFULLY SUBMITTED this 22nd day of November, 2021.

By: */s/ Eric J. Troutman*
Eric J. Troutman (*pro hac vice*)
eric.troutman@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071
Telephone: (213) 624-2500
Facsimile: (213) 623-4581

David S. Norris (AZ Bar No. 034309)
david.norris@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
1 East Washington Street, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 528-4000
Facsimile: (602) 253-8129

Attorneys for Defendant
loanDepot.com, LLC

**L.R. Civ 12.1 (c) CERTIFICATION**

Pursuant to this Court's Preliminary Order [ECF No. 5] and LRCiv 12.1 (c), I certify that counsel for Defendant loanDepot.com, LLC notified the opposing party of the issues asserted in this motion pursuant to Rule 12(b)(6) by email, and that the parties conferred but were unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party.

*/s/ Eric J. Troutman*
Eric J. Troutman