BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
ERIC R. WOMACK
Assistant Director, Federal Programs Branch
LAUREL H. LUM (NY Bar No. 5729728)
Trial Attorney
United States Department of Justice
Civil Division
1100 L St. NW
Washington, DC 20005
(202) 305-8177
laurel.h.lum@usdoj.gov

*Attorneys for United States*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Richard Winters, Jr., individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LoanDepot, LLC, <br><br> Defendant. | Case No. 2:20-cv-01290-SPL <br><br> **INTERVENOR UNITED STATES OF AMERICA'S NOTICE OF INTERVENTION** <br><br> (Assigned to Hon. Steven P. Logan) |

Pursuant to Federal Rules of Civil Procedure 5.1(c) and 24(a)(1) and in accordance with the authorization of the Solicitor General of the United States, the United States of America hereby intervenes in this case for the limited purpose of defending the constitutionality of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227. On November 22, 2021, Defendant filed a Motion to Dismiss the Second Amended Complaint or, in the Alternative, to Stay Pending the Ninth Circuit's Review of *Chennette*, No. 20-35962. Def.'s Mot. to Dismiss or, in the Alternative, to Stay, ECF No. 45. In it, Defendant argues that it would be unlawful to apply the TCPA against Defendant because the TCPA is facially unconstitutional and, in the alternative, was unconstitutional during the relevant time period. *Id.*

1

Federal Rule of Civil Procedure 5.1 provides for a procedure to notify the United States when a federal statute is challenged as unconstitutional. Rule 5.1(c) allows the Attorney General to intervene within 60 days of the filing of an appropriate notice or the Court's certification of the constitutional challenge, "[u]nless the Court sets a later time." Defendant filed its Rule 5.1 notice on December 7, 2021, ECF No. 48, and the Government timely requested and was granted an extension to March 9, 2022, to determine whether to intervene. *See* ECF Nos. 54, 56.

The United States is entitled to intervene in this case pursuant to the Federal Rules of Civil Procedure and relevant statutes. Not only does Rule 5.1(c) permit the Attorney General to intervene in an action where the constitutionality of a federal statute is challenged, but Federal Rule of Civil Procedure 24(a)(1) permits a non-party to intervene when the non-party "is given an unconditional right to intervene by a federal statute." The United States has an unconditional statutory right to intervene "[i]n any action . . . wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question . . . ." 28 U.S.C. § 2403(a). In such an action, "the court . . . shall permit the United States to intervene . . . for argument on the question of constitutionality." *Id*. In addition, 28 U.S.C. § 517 authorizes an officer of the Department of Justice to intercede "to attend to the interests of the United States in a suit pending in a court of the United States." *U.S. ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 892 F.3d 822, 833 n.6 (6th Cir. 2018) ("The legislative branch has created the scheme that gives the executive branch the ability to 'attend to the interests of the United States,' 28 U.S.C. § 517, as it—not we—may choose."), *cert. denied*, 139 S. Ct. 1323 (2019).

Accordingly, the United States hereby provides notice of intervention in this matter for the limited purpose of defending the constitutionality of the TCPA. Accompanying this notice is the United States' memorandum in defense of the constitutionality of the TCPA.

**INTERVENOR UNITED STATES OF AMERICA'S MEMORANDUM IN SUPPORT OF THE CONSTITUTIONALITY OF THE TCPA**

**INTRODUCTION**

The Telephone Consumer Protection Act ("TCPA") prohibits the use of certain automated technologies in making calls without the consent of the person being called, unless those calls are made for emergency purposes. In carrying out this general prohibition, the TCPA authorizes the Federal Communications Commission (FCC) by rule or order to implement the provisions of the Act, including by exempting certain calls from the TCPA's robocall restrictions. The FCC has exercised that authority for decades, and courts have consistently rejected the notion that the actions of the agency render the statute itself facially unconstitutional.

The TCPA itself does include certain exceptions to the robocall restrictions. But the only one that has been invalidated is the exception that Congress added in 2015 for calls made to collect debts owed to or guaranteed by the United States (the "government-debt exception"). *See Barr v. American Association of Political Consultants, Inc.* ("*AAPC*"), 140 S. Ct. 2335 (2020). However, the Supreme Court held that exception to be severable from the remainder of the statute, and accordingly left the robocall restrictions in place.

In opposition to the weight of this authority, Defendant argues in its Motion to Dismiss or, in the Alternative, to Stay, that the Court lacks subject matter jurisdiction over Plaintiff's claims for two reasons: 1) the TCPA is unconstitutional because "[t]he text of the TCPA, and the FCC's implementation of it, contain numerous content-based restrictions" that do not survive strict scrutiny and cannot be severed to save the statute, Def.'s Mot. at 9; and, in the alternative, 2) the government-debt exception rendered the robocall restrictions unconstitutional during the time between the exception's enactment and *AAPC*, which includes the alleged call at issue in this case, *id.* at 6-9. As numerous courts have held, neither argument has merit. The TCPA is

facially valid, and the plurality opinion in *AAPC* squarely rejected the view that the robocall restrictions were unconstitutional for the period between when the government-debt exception was enacted and when the Supreme Court held that it was invalid but severable.

In the alternative, Defendant asks this Court to stay proceedings pending the Ninth Circuit's review of *Chennette v. Porch.com, Inc.*, No. 20-35962. *Id.* at 6. Although the Government would not oppose a stay, which would obviate the need to decide the constitutional question at this juncture, it is not apparent that the constitutional issue will be decided by the Ninth Circuit in that case. Appellee's Br., *Chennette v. Porch.com, Inc.*, No. 20-35962 (9th Cir.) at 39-41, ECF No. 24 (briefly arguing, as one of several alternate grounds for affirmance, that *AAPC* precludes application of the robocall restrictions to calls placed between the creation of the government-debt exception and its severance). In light of the settled case law on this issue, this Court need not wait for a possible Ninth Circuit decision to reject Defendant's constitutional challenge.

## BACKGROUND

The TCPA's robocall restrictions make it unlawful to use any automatic telephone dialing system to make any call to a cellular telephone number (the "autodialer restriction"), or to use an artificial or prerecorded voice to make any call to a residential or cellular telephone number (the "prerecorded-call restriction"), unless the call is made "for emergency purposes" or with the prior express consent of the called party. 47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(1)(B). In 2015, Congress amended both of these restrictions (collectively, the "robocall restrictions") to exclude any calls made solely to collect a debt owed to or guaranteed by the United States (the "government-debt exception"). *See* Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301, 129 Stat. 584, 588.

In July 2020, the Supreme Court held in *AAPC* that the government-debt exception "added an unconstitutional discriminatory exception to the robocall restriction." 140 S. Ct. at 2352 (plurality op.); *id.* at 2364 (Gorsuch, J.) (concurring in judgment as to that conclusion). However, the Court held that the government-debt exception—*i.e.*, "the constitutionally offending provision," *id.* at 2353—was severable, and thus "the correct result in this case is to sever the . . . exception and leave in place the longstanding robocall restriction."[1] *Id.* at 2355 (plurality op.); *see also id.* at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer, J.) (concurring in judgment with respect to severability and dissenting in part).

In footnote 12 of the plurality opinion, three Justices discussed the effect that severing the government-debt exception would have on parties' liability for prior violations of the autodialer restriction, stating that "our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *Id.* at 2355 n.12. Neither of the separate opinions concurring with respect to severability questioned that conclusion. *See id.* at 2357 (Sotomayor, J.) (concurring in judgment); *id.* at 2363 (Breyer, J.).

In the operative complaint, Plaintiff Richard Winters, Jr., asserts a violation of the robocall restrictions based on his alleged receipt of an unwanted, prerecorded call to his cellular phone from Defendant on October 4, 2018. Second Am. Compl., ¶¶ 7-8, 12, ECF No. 27. He also proposes a class encompassing individuals who received similar calls from Defendant either to their cellular or landline phones within the four years prior to the Complaint. *Id.* ¶¶ 13, 25, 29. Defendant moved to dismiss Plaintiff's Second Amended Complaint, arguing that the

---

[1] Although the opinion solely addressed the government-debt exception in the autodialer restriction, 47 U.S.C. § 227(b)(1)(A)(iii), its holding applies equally to the virtually identical government-debt exception contained in the prerecorded-call restriction, 47 U.S.C. § 227(b)(1)(B). *See, e.g.*, *Van Connor v. One Life Am., Inc.*, 546 F. Supp. 3d 458 (D.S.C. 2021) (applying the same analysis to claims under 47 U.S.C. §§ 227(b)(1)(A)(iii) and 227(b)(1)(B) when assessing the same *AAPC*-based retroactivity argument at issue in the present case), *denying mot. to certify appeal*, 2021 WL 4272614 (D.S.C. Sept. 21, 2021).

TCPA is facially unconstitutional and that, in the alternative, the robocall restrictions were unconstitutional during the period between the enactment of the government-debt exception and *AAPC*.  Def.'s Mot. at 5, 9-11.  In the alternative, Defendant asks this Court to stay proceedings pending the Ninth Circuit's review of *Chennette*. *Id.* at 6.

## ARGUMENT

I.   **The TCPA is Facially Constitutional.**

a.   **Regulatory Exemptions**

Defendant argues that the FCC's exercise of its delegated authority renders the statute itself unconstitutional.  However, as a threshold matter, this Court cannot reach the merits of Defendant's challenge regarding the FCC's regulations because it lacks jurisdiction to consider it.  The Hobbs Act vests "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to *determine the validity* of . . . all final orders of the [FCC]" in "[t]he court of appeals." 28 U.S.C. § 2342(1) (emphasis added).  In line with the Hobbs Act, the Ninth Circuit has recognized that district courts lack jurisdiction over the validity of FCC orders and regulations. *U.S. W. Commc'ns, Inc. v. Jennings*, 304 F.3d 950, 958 n.2 (9th Cir. 2002); *United States v. Dunifer*, 219 F.3d 1004, 1007 (9th Cir. 2000); *Moser v. FCC*, 46 F.3d 970, 973 (9th Cir. 1995); *see also Sable Commc'ns of Cal., Inc. v. FCC*, 827 F.2d 640, 643 (9th Cir. 1987).

As a recent decision in this District considering the same issue put it, "[i]t is difficult to understand how [the determination of whether the FCC-regulation-created exceptions fail strict scrutiny] could be viewed as anything other than 'determin[ing] the validity' of the FCC-promulgated exceptions." Order at 9, ECF No. 87, *Canady v. Bridgecrest Acceptance Corp.*, 2:19-cv-4738 (D. Ariz. Jan. 21, 2022) ("Order").  Thus, as the court in *Canady* pointed out, Defendant's proposed work-around for the jurisdictional bar—that this Court hold the *entire* TCPA invalid since it lacks the "jurisdiction to sever FCC exemptions," Def.'s Mot. at 11—is

not an option, because "the Court could only get to that step after evaluating the validity of the exemptions, which is something that § 2342(1) forbids."[2]  Order at 9, *Canady*, 2:19-cv-4738.

Even if the Court had jurisdiction to determine the validity of FCC regulations, moreover, those regulations do not affect the Act's constitutionality because they are not part of the TCPA itself.  *See, e.g.*, *Sable Commc'ns*, 827 F.2d at 643 (rejecting the argument that an FCC regulation had become "an integral part of the statute" such that the district court had jurisdiction to consider a challenge to it).  Nor does the TCPA's grant of regulatory discretion to the FCC create a constitutional problem with the statute itself.  *See, e.g.*, *Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036, 1045 (N.D. Cal. 2017) ("Although the statute empowers the FCC to create exceptions that promote the interest of privacy rights, there are content-neutral ways for the FCC to accomplish this . . . . The mere possibility that the FCC could create a content-based exception at some later time does not render this exception to be content-based itself."); *accord Moser*, 46 F.3d at 973.  Indeed, if the FCC were to violate the Constitution in exercising its delegated authority, the proper remedy would be to strike down the *regulation*, not the TCPA.  To accept the contrary suggestion, *see* Def.'s Mot. at 11-12, would be to endorse the incorrect proposition that, when an agency issues an order or regulation pursuant to a statute, the agency is in fact amending the statute—something the agency has no power to do.  *See, e.g.*, *Dalton v. United States*, 816 F.2d 971, 974 (4th Cir. 1987) (explaining that an agency "lacks power even by a regulation adopted after strict compliance with the Administrative Procedure Act . . . to repeal, modify, or nullify a statute") (citation omitted).  Thus, because the constitutionality of FCC

---

[2]  Confusingly, Defendant itself appears to recognize the existence of this jurisdictional bar, arguing that the Court could not "sever" these actions by the FCC from the statute. Def.'s Mot. at 11.  If this Court lacks jurisdiction to "sever" the actions by the FCC, then it is unclear how it could have jurisdiction to review them in the first place.

7

regulations has no relevance to the constitutionality of the TCPA itself, Defendant cannot circumvent the jurisdictional bar by challenging the constitutionality of FCC regulations.

### b. Emergency Purposes Exception

Defendant also challenges the emergency purposes exception that appears in 47 U.S.C. §§ 227(b)(1)(A) and 227(b)(1)(B), arguing that the exception renders the TCPA unconstitutional because it is content-based, does not survive strict scrutiny, and is not severable. Def.'s Mot. at 9-11. This exception has been a part of the TCPA since its passage, but no court has ever suggested that the TCPA should be struck down on that basis. *See, e.g.*, *Moser*, 46 F.3d 970. The absence of such decisions is sensible, in part because the emergency purposes exception is not content-based. The exception in no way depends on *what* is said during the course of a call but instead depends on the *context* in which a call is made. Regardless, even if the Court viewed the exception as being content-based, it would survive strict scrutiny.[3] The Government has a compelling interest in protecting health and safety. Order at 13-14, *Canady*, 2:19-cv-4738 (recognizing the "compelling government interest in protecting health and safety"); *see Simopoulos v. Virginia*, 462 U.S. 506, 519 (1983) (recognizing a state's compelling interest in protecting a woman's health and safety); *United States v. Lafley*, 656 F.3d 936, 940–41 (9th Cir. 2011) (recognizing the government's compelling interest in protecting the health and safety of prison inmates). Congress served this interest when it created the exception within the TCPA for dissemination of information through robocalls in emergency circumstances, which aligned with Congress's desire to promote privacy and minimize intrusion without compromising "the health and safety of the consumer." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394, § 2(12). The exception allowing for use of

---

[3] Even Defendant admits that this exception, out of all the exceptions Defendant raises, "comes closest" to surviving strict scrutiny. Def.'s Mot. at 10.

autodialing "for emergency purposes" is narrowly tailored to this compelling interest. Order at 13-14, *Canady*, 2:19-cv-4738 (holding that, even assuming that the emergency purposes exception is content-based, it satisfies strict scrutiny because it is narrowly tailored to addressing the government's compelling interest in protecting health and safety); *see also Brickman*, 230 F. Supp. 3d at 1047 (holding that the emergency purposes exception survived strict scrutiny because "Congress carefully balanced the interests in the health and safety of consumers with the interests in protecting privacy and determined the emergency call exception was carefully tailored to address both interests"). Further, Defendant's unsupported contention that the emergency purposes exception is "so ephemeral as to remain both an under- and over-inclusive restriction on speech," Def.'s Mot. at 10, fails to rebut the persuasive reasoning of those district court decisions that have already rejected such arguments. *See Brickman*, 230 F. Supp. 3d at 1046-48; *see also Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1150-51 (D. Minn. 2017).

     **II.**     **Defendant May Be Held Liable For Calls Made Before *AAPC*.**

          **a.**    **Because the Government-Debt Exception Was an Unconstitutional Amendment to an Otherwise Valid Statute, It Had No Effect on the Robocall Restrictions, Which Have Always Been Fully Operative.**

As argued above, the robocall restrictions were valid before the enactment of the government-debt exception, and they are likewise valid and enforceable for TCPA violations that occurred after the enactment of the exception but before its severance. Defendant's view that the robocall restrictions are unenforceable for calls made during that period, *see* Def.'s Mot. at 6-9, cannot be squared with *AAPC* and the Supreme Court's prior decisions concerning the effect of invalid amendments to constitutional statutes. The Supreme Court has long made clear that an unconstitutional amendment is "powerless to work any change in the existing statute," and that

the original "statute must stand as the only valid expression of the legislative intent." *Frost v. Corp. Comm'n*, 278 U.S. 515, 526-27 (1929). Thus, the validity of a provision "c[an]not be impaired by the subsequent adoption of what were in form amendments, but, in legal effect, were mere nullities." *Eberle v. Michigan*, 232 U.S. 700, 705 (1914). Citing those principles, *AAPC* confirmed the continuing validity of the autodialer restriction, explaining that "an unconstitutional statutory amendment" like the government-debt exception "'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." 140 S. Ct. at 2353 (plurality op.) (quoting *Frost*, 278 U.S. at 526-27); *see Lindenbaum v. Realgy, LLC*, 13 F.4th 524, 528 (6th Cir. 2021) ("Because unconstitutional enactments are not law at all, . . . a court conducting severability analysis is interpreting what, if anything, the statute has meant from the start in the absence of the always-impermissible provision."), *petition for cert. filed*, No. 21-866 (U.S. Dec. 10, 2021).

Prior Supreme Court decisions applying those principles confirm that a defendant may be liable for violating a provision notwithstanding the enactment of an unconstitutional amendment. In *Eberle*, the Court affirmed a conviction even though amendments to the law of conviction enacted prior to the alleged violation were unconstitutional. 232 U.S. at 706. Likewise, in *United States v. Jackson*, 390 U.S. 570, 591 (1968), the Court held that the defendants could be tried for alleged violations of the Federal Kidnapping Act's original terms, notwithstanding the unconstitutionality of an amendment to the Act. Defendant's position cannot be reconciled with these holdings.

Defendant's argument is also at odds with longstanding principles of judicial review. When the "Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law," and it is therefore "not accurate to say

10

that the Court's decision . . . 'changed' the law that previously prevailed." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313 n.12 (1994). A court's interpretation of a statute is a statement of "what the law *is*," not "what it is today *changed to*, or what it will *tomorrow* be." *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 549 (1991) (Scalia, J., concurring in judgment). Accordingly, when the Supreme Court holds that an amendment to a statute is inconsistent with the Constitution, it is holding that the provision was unconstitutional from the outset, not that it is newly invalid upon the entry of final judgment. *See Chi., Indianapolis, & Louisville Ry. Co. v. Hackett*, 228 U.S. 559, 566 (1913); *see also Harper v. Va. Dep't of Tax'n*, 509 U.S. 86, 97 (1993); *see also Lindenbaum*, 13 F.4th at 528 ("Courts do not change statutes.").

*AAPC*'s holding that the government-debt exception was unconstitutional—and thus "as inoperative as if it had never been passed," *Hackett*, 228 U.S. at 566—means that the exception was always invalid and was therefore "powerless to work any change in the existing statute," even for a period of time, *Frost*, 278 U.S. at 526-27. In concluding that the exception was severable, the Court said what the TCPA has always meant. *See Rivers*, 511 U.S. at 312-13, 313 n.12. Accordingly, there was never a time when the exception was invalid but not severed; by operation of law, the exception has been both invalid and severed since the date of its enactment, and Defendant may be held liable under the valid remainder of the statute for conduct in 2018.

For this reason, courts have overwhelmingly rejected the exact argument that Defendant makes—that *AAPC*'s severance of the government-debt exception cannot be applied retroactively. In fact, over forty district court decisions have rejected this argument. *See, e.g.*, *Abramson v. Fed. Ins. Co.*, Case No. 8:19-cv-2523-T-60AAS, 2020 WL 7318953, at *2 (M.D. Fla. Dec. 11, 2020) ("the vast majority of cases this Court has reviewed conclude that

11

parties may continue to bring claims under the portions of § 227(b) unaltered by *AAPC*"); *see also* Order at 16-17, *Canady*, 2:19-cv-4738; *Buell v. Credit.com, Inc.*, Case No. 4:21-cv-01055-KAW, 2021 WL 3271127, at *5 (N.D. Cal. July 30, 2021); *Massaro v. Beyond Meat, Inc.*, Case No. 3:20-cv-00510-AJB-MSB, 2021 WL 948805, at *9 (S.D. Cal. Mar. 12, 2021); *Stoutt v. Travis Credit Union*, 512 F. Supp. 3d 1048, 1051-54 (E.D. Cal. 2021), *granting mot. to certify appeal*, 2021 WL 1143612 (E.D. Cal. Mar. 25, 2021); *Trujillo v. Free Energy Sav. Co.*, Case No. 5:19-cv-02072-MCS-SP, 2020 WL 8184336, at *5 (C.D. Cal. Dec. 21, 2020), *denying mot. to certify appeal*, 2021 WL 757023 (C.D. Cal. Feb. 25, 2021).

In contrast, only four district courts have dismissed TCPA complaints to the extent that they sought damages for conduct that occurred after the government-debt exception's enactment and before its severance. *Cunningham v. Matrix Fin. Servs., LLC*, 531 F. Supp. 3d 1164, 1180-81 (E.D. Tex. 2021); *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, 506 F. Supp. 3d 1242 (M.D. Fla. 2020); *Lindenbaum v. Realgy, LLC*, 497 F. Supp. 3d 290 (N.D. Ohio 2020); *Creasy v. Charter Commc'ns, Inc.*, 489 F. Supp. 3d 499 (E.D. La. 2020), *judgment entered*, Civ. A. No. 20-1199, 2020 WL 7646640 (E.D. La. Dec. 23, 2020).[4] Of these decisions, only two still stand. The Sixth Circuit—the only circuit to consider the issue—reversed the district court's decision in *Lindenbaum*, holding that *AAPC*'s severance of the government-debt exception applies retroactively. 13 F.4th at 530. The Middle District of Florida reversed itself on the retroactivity issue, holding that, "[u]pon further reflection, the Court departs from its earlier opinion because, since the Court's Order in *Hussain*, every court faced with this same issue has concluded that a plaintiff may continue to bring § 227(b) claims post-AAPC." Order at 4, ECF No. 30, *Boisvert v. Carnival Corp.*, Case No. 8:20-cv-2076 (M.D. Fla. Mar. 12, 2021).

---

[4] None of the defendants in these cases timely notified the Government of their constitutional challenges, and the United States accordingly had no opportunity to intervene in district court.

**b. Defendant's Countervailing Arguments Are Meritless.**

None of Defendant's arguments provide a basis for this Court to depart from the traditional understanding of severance principles. Defendant asserts that the entirety of the robocall restrictions were "unconstitutional between the enactment of the government-debt exemption in 2015 and the Supreme Court's severance of the exemption on July 6, 2020" in *AAPC*. Def.'s Mot. at 5. But, contrary to Defendant's contention, the plurality in *AAPC* concluded that the government-debt exception did not render "the entire 1991 robocall restriction unconstitutional," 140 S. Ct. at 2349 (plurality op.); *see id.* at 2362 (Breyer, J.) (concurring in judgment in part and dissenting in part), and admonished in footnote 12 that its opinion "does not negate the liability of parties who made robocalls" prior to the Court's decision, *id.* at 2355 n.12. *See, e.g.*, *Buell*, 2021 WL 3271127, at *5 (holding "that the TCPA's general robocall restriction remained intact from 1991 onward").

Defendant argues that the plurality's statement in footnote 12 is "mere dicta and is not precedential." Def.'s Mot. at 8. Yet Defendant acknowledges that one of the questions before the Court was whether the proper remedy would be to sever the government-debt exception. *See id.* After answering that question in the affirmative, the plurality made statements in footnote 12 that reflect its recognition of the long-standing principle of severance—that unconstitutional amendments are void *ab initio*. *See Frost*, 278 U.S. at 526-27. Thus, *dicta* or not, footnote 12 reflects long-standing precedent. Moreover, as many courts have recognized, footnote 12 is not *dicta*. *See, e.g.*, *Poonja v. Kelly Servs., Inc.*, Case No. 20-cv-4388, 2021 WL 4459526, at *5 (N.D. Ill. Sept. 29, 2021) ("This Court respectfully disagrees with the district court decisions from other circuits in which judges have viewed footnote 12 as non-binding

13

*dicta*."); *Buell*, 2021 WL 3271127, at *4 (holding that footnote 12 was binding because seven Justices concurred in the severability discussion of the plurality opinion).

Further, none of the cases Defendant cites to support the proposition that severance operates only prospectively, *see* Def.'s Mot. at 6-9, displace Supreme Court precedent holding that a court's construction of a statute does not "change" the law, *see Rivers*, 511 U.S. at 312-13, 313 n.12, and that the Court's interpretation of a law must be given retroactive effect in all pending cases, *see Harper*, 509 U.S. at 97. There is no concern, therefore, that Defendant could be held "liable for calls that took place . . . [when] the TCPA as a whole was unconstitutional," Def.'s Mot. at 6, because long-standing precedent instructs that the legal effect of severance is to treat the underlying statute as if the severed amendment never existed. *Hackett*, 228 U.S. at 566.

Defendant cites a concurrence from *Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760, 767-68 (Fed. Cir. 2020) (O'Malley, J., concurring), *vacated & remanded*, *United States v. Arthrex Inc.*, 141 S. Ct. 1970 (2021), Def.'s Mot. at 7, which states that "judicial severance of one portion of an unconstitutional statute is, by necessity, only applicable prospectively." *Arthrex*, 953 F.3d at 767 n.2. This case, however, is inapposite because it concerns the relief warranted when a party challenges an agency decision issued by improperly appointed officers. There is no analogous agency decision in this case. Instead, here, the question is whether Defendant can be liable for allegedly violating a statutory provision that was valid when enacted.

Defendant also cites, without substantial discussion, to *Grayned v. City of Rockford*, 408 U.S. 104 (1972) and *Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017), in support of its position on retroactivity. These cases and their holdings, however, are distinguishable. Defendant quotes the Supreme Court's statement in *Grayned* that the Court must "[n]ecessarily . . . consider the facial constitutionality of the ordinance in effect when appellant was arrested and

14

convicted." *Grayned*, 408 U.S. at 107 n.2; *see* Def.'s Mot. at 6. But, unlike in *AAPC*, the Court gave no indication in *Grayned* that the statute's content-based exception was severable from the remainder of the statute. Accordingly, the provision under which Grayned was convicted was invalid *as a whole* as enacted. By contrast, *AAPC* confirms that the robocall restrictions were *valid* when enacted and that the government-debt exception was severable and did not undermine the validity of the restrictions. 140 S. Ct. at 2349, 2353 (plurality op.). *Grayned* therefore provides no basis for allowing Defendant to avoid liability in these circumstances, in which the alleged misconduct violated a valid restriction. *See Stout*, 512 F. Supp. 3d at 1054 (holding that "reliance on *Grayned* [wa]s misplaced" in a TCPA case involving the same argument because "*Grayned* says nothing about how courts should treat alleged violations of law that occurred during a period of unconstitutionality resulting from addition of an unconstitutional statutory exception that has since been severed and invalidated"). The Supreme Court's statement in *Morales-Santanta* that a "defendant convicted under [an unconstitutional law] . . . may assail his conviction without regard to the manner in which the legislature might subsequently cure the infirmity" is distinguishable for the same reasons, mainly because the Court relied upon *Grayned* in reaching this holding. 137 S. Ct. at 1699 n.24. Moreover, the *AAPC* plurality was well aware of *Morales-Santana*, *see AAPC*, 140 S. Ct. at 2354, and nonetheless stated that *AAPC* "does not negate the liability of parties who made robocalls" prior to that decision, *id.* at 2355 n.12.

Defendant also relies heavily on *Creasy*—one of the four district court cases that have held that *AAPC*'s severance of the government-debt exception is prospective only. Def.'s Mot. at 7-9. But, as noted above, *Creasy* runs contrary to the substantial weight of authority from other district courts and the Sixth Circuit and misapprehends Supreme Court authority. In *Creasy*, the court held that "the unconstitutional *amended* version of § 227(b)(1)(A)(iii) is

15

what applied to [defendant] at the time of the challenged communications at issue." 489 F. Supp. 3d at 508.  This holding ignores the Supreme Court's precedent instructing that the unconstitutional government-debt exception has been both invalid and severed since it was enacted.  It is therefore not the case that an unconstitutional version of the TCPA applied to Defendant at the time it allegedly made calls to Plaintiff.

Finally, Defendant argues that the government-debt exception cannot possibly have been void *ab initio* because such an interpretation would allow government-debt collectors to escape liability for calls placed between 2015 and the exception's severance in *AAPC*, perpetuating the discrimination that *AAPC* sought to eliminate.  Def.'s Mot. at 8.  But to the extent that courts choose not to impose liability on government-debt collectors for conduct that occurred during that timeframe, it will not be because the courts recognize the legitimacy of the exception, because the exception has "in legal effect, [been a] . . . mere nullit[y]" since the date of its enactment. *Eberle*, 232 U.S. at 705.  Rather, the choice not to impose liability would be based on the fair notice doctrine, because holding debt collectors liable for calls made after the passage of the amendment but prior to the Court's decision in *AAPC* would implicate the "fundamental principle . . . that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."  *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *see Moody v. Synchrony Bank*, 529 F. Supp. 3d 1362, 1369 (M.D. Ga. 2021) ("[T]o the extent Justice Kavanaugh proposed that government-debt collectors should not be retroactively liable, that principle would presumably be founded on concerns about fair notice and good-faith reliance on the TCPA's exception.").  Therefore, any differential treatment between government-debt collectors and other robocallers would not be based on preferential treatment of favored speech, but rather would follow from the fact that certain callers, such as Defendant, had fair

notice of potential liability while others did not. *See Lindenbaum*, 13 F.4th at 530 (rejecting the argument that failing to hold government-debt collectors liable for robocalls placed between 2015 and 2020 was an unconstitutional, content-based restriction because "the centuries-old rule that the government cannot subject someone to punishment without fair notice is not tied to speech").

## CONCLUSION

For the foregoing reasons, the Court should reject Defendant's constitutional challenge.

Dated: March 8, 2022          Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ERIC R. WOMACK
Assistant Director, Federal Programs Branch

By: s/ *Laurel H. Lum*
    LAUREL H. LUM
    Trial Attorney
    United States Department of Justice
    Civil Division
    1100 L St. NW
    Washington, DC 20005
    (202) 305-8177
    laurel.h.lum@usdoj.gov