**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Winters, Jr., | No. CV-20-01290-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| Loan Depot LLC, | |
| Defendant. | |

Before the Court are Defendant loanDepot.com, LLC's[1] Motion to Dismiss the Second Amended Complaint or, in the Alternative, to Stay Pending the Ninth Circuit's Review of *Chennette*, No. 20-35962 (Doc. 45) and Motion to Strike Class Allegations or, Alternatively, to Strike Non-Arizona Class Members' Claims (Doc. 43). For the reasons that follow, the Motion to Dismiss or, in the Alternative to Stay will be denied, and the Motion to Strike will be granted with leave to amend.

**I.  BACKGROUND**

On June 30, 2020, Plaintiff Richard Winters, Jr. filed this putative class action, alleging that Defendant violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* (Doc. 1). On May 5, 2021, Plaintiff filed a Second Amended Complaint ("SAC"), which is now the operative complaint, alleging both negligent and willful violations of the TCPA by Defendant in the four years before the lawsuit was filed. (Doc.

---

[1] Plaintiff names Defendant as "Loan Depot, LLC," while Defendant refers to itself as "loanDepot.com, LLC." The Court will use Defendant's self-identification.

27). Plaintiff alleges that Defendant "us[ed] an artificial or prerecorded voice to place telemarketing calls" without consent—in other words, that Defendant made illegal robocalls. (Doc. 27 ¶¶ 25, 29).

This case has been stayed twice. First, on October 29, 2020, the Court granted Defendant's Motion to Stay (Doc. 10) and stayed the case pending the United States Supreme Court's resolution of *Facebook, Inc. v. Duguid*, No. 19-511. (Doc. 23). After the Supreme Court issued its decision, on April 14, 2021, this Court lifted the stay and allowed Plaintiff time to file an amended complaint based on the Supreme Court's holding. (Doc. 26).

Second, on July 1, 2021, the Court granted another Motion to Stay filed by Defendant (Doc. 28) and stayed the case pending the Ninth Circuit's resolution of *Perez v. Rash Curtis & Associates*, No. 20-15946. (Doc. 40). On November 17, 2021, the parties notified that court that the Ninth Circuit dismissed *Perez* pursuant to a stipulation without resolving the case on the merits (Doc. 41), and the Court lifted the stay (Doc. 42).

On November 22, 2021, Defendant filed the Motions that are now before the Court. (Docs. 43 & 45). On December 7, 2021, Defendant filed a Notice of Constitutional Challenge to the TCPA pursuant to Federal Rule of Civil Procedure ("Rule") 5.1(a). (Doc. 48). On January 12, 2022, the Court certified the constitutional challenge to the United States Attorney General (Doc. 55) and gave the United States until March 9, 2022 to intervene (Doc. 56). On March 8, 2022, the United States filed a Notice of Intervention and Memorandum in Support of the Constitutionality of the TCPA. (Doc. 60).

The Court now addresses the pending Motions, which have been fully briefed. (Docs. 43, 45, 47, 50, 52, 53, 62).

**II.    DISCUSSION**

The Court will first address the Motion to Dismiss or, in the Alternative to Stay (Doc. 45). The Court will then address the Motion to Strike (Doc. 43).

///

///

### A. MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY

Defendant's Motion to Dismiss or, in the Alternative, to Stay Pending the Ninth Circuit's Review of *Chennette* (Doc. 45) arises in part from the United States Supreme Court's decision in *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020). There, the Supreme Court held that an exception to the robocall provision of the TCPA for the collection of government debt was a content-based exception in violation of the First Amendment. *Id.* at 2347. Still, rather than invalidating the entire robocall provision, the Supreme Court held that the government-debt exception was severable and left the rest of the robocall provision in effect. *Id.* at 2355. Further, footnote 12 of the plurality opinion in *Barr* stated in part that "our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction" from the time the government-debt exception was enacted in 2015 to when it was severed in 2020. *Id.* at 2355 n.12. Defendant contends, however, that footnote 12 is nonbinding dicta and that it remains an open question whether a defendant can be held liable for robocalls made while the unconstitutional government-debt exception was affixed to the statute. Defendant argues that the question should be answered in the negative and that the SAC should be dismissed on that basis, or alternatively, that the Court should stay this case until the Ninth Circuit has the opportunity to resolve the question in *Chennette v. Porch.com, Inc.*, No. 20-35962.

#### i. Motion to Stay Pending the Ninth Circuit's Review of *Chennette*

Having previously stayed the case rather than deciding a motion to dismiss on similar grounds, the court first addresses Defendant's Motion in the Alternative to Stay.

#### 1. Legal Standard

A stay is "an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal quotation marks and alteration omitted). When determining whether to issue a stay pending resolution of another case, the Court must consider competing interests including "the possible damage which may result from the granting of a stay, the

hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (internal quotation marks omitted); *see Kuang v. U.S. Dep't of Def.*, No. 18-CV-03698-JST, 2019 WL 1597495, at *2–3 (N.D. Cal. Apr. 15, 2019).

### 2. Discussion

Although the Court has previously stayed this case twice pending other proceedings, the Court declines to do so at this time. A crucial consideration is that—while this Court will certainly not speculate as to how the Ninth Circuit will decide *Chennette*—it is not at all clear that the case will resolve the pertinent question of whether a defendant can be held liable under the robocall provision while the unconstitutional government-debt exception was affixed to it. *See Zabriskie v. Fed. Nat'l Mortg. Ass'n*, No. CV-13-02260-PHX-SRB, 2015 WL 3712072, at *2 (D. Ariz. Mar. 30, 2015) ("The Court also cannot conclude that a stay of the proceedings . . . would necessarily promote judicial economy because it is too speculative to determine how, or on what grounds, the Ninth Circuit will rule."). The issue was first raised in *Chennette* in the appellees' answering brief as one of several possible alternative grounds for affirmance. *See* Answering Brief at 52–54, *Chennette* (9th Cir. May 5, 2021), ECF No. 24. Neither the underlying motion filed in the district court nor the district court's order that is the subject of the appeal addressed the issue. *See* Defendants' Motion to Dismiss, *Chennette*, No. 1:20-cv-00201-SRB (D. Idaho July 15, 2020), ECF No. 18; Order, *Chennette*, No. 1:20-cv-00201-SRB (D. Idaho Sept. 2, 2020), ECF No. 24. And the Ninth Circuit ordered the parties to be prepared to focus on a different issue at oral argument, which took place October 4, 2021. *See* Order, *Chennette*, No. 20-35962 (9th Cir. Sept. 30, 2021), ECF No. 47. Thus, it would be speculative at best to believe that *Chennette* will actually resolve the issue in question here.

That consideration, along with the passage of an additional eight months of time, changes the calculus of the Court's analysis from its previous issuances of stays. (*See* Docs.

23 & 40). It remains true that Plaintiff is unlikely to suffer significant damage from the granting of a stay. Likewise, it remains true that Defendant will incur litigation costs if it is required to go forward. *But see Lockyer*, 398 F.3d at 1112 ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' . . . ."). But as to the third factor, the orderly course of justice, it is speculative, if not unlikely, that the Ninth Circuit's proceedings in *Chennette* will "decide, or . . . contribute to the decision of, the factual and legal issues" before this Court.[2] *Id.* at 1113. Moreover, this case has been stagnant for most of the nearly two years since it was filed. Thus, in the interests of efficient docket management and expeditious resolution of litigation, this case must proceed at this time. *See id.* at 1112–13; *Zabriskie*, 2015 WL 3712072, at *2. The Motion to Stay will be denied.

### ii. Motion to Dismiss the SAC

Defendant moves to dismiss the SAC for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6) on the grounds that the TCPA was unconstitutional at the time of the events giving rise to this case.

### 1. Legal Standard

Rule 12(b)(1) "allows litigants to seek the dismissal of an action from federal court for lack of subject matter jurisdiction." *Kinlichee v. United States*, 929 F. Supp. 2d 951, 954 (D. Ariz. 2013) (internal quotation marks omitted). Federal courts "are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *K2 Am. Corp. v. Roland Oil & Gas, LLC*, 653 F.3d 1024, 1027 (9th Cir. 2011). As a result, "federal courts lack jurisdiction over claims based upon unconstitutional statutes." *Stoutt v. Travis Credit Union*, 512 F. Supp. 3d 1048, 1052 (E.D. Cal. 2021) (citing *Ex parte Siebold*, 100 U.S. 371, 377 (1879)).

In addition, to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

---

[2] Of course, if the Ninth Circuit issues a ruling in *Chennette* that is contrary to this Order, Defendant may seek reconsideration of this Order under Local Rule 7.2(g).

5

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Id.* Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013).

## 2. Discussion

Defendant argues that the entire robocall provision of the TCPA was unconstitutional—and thus does not give rise to a cause of action or subject matter jurisdiction—from the time the government-debt exception was enacted in 2015 to the time it was severed in 2020. (Doc. 45 at 5–9). Defendant further argues that the robocall provision remains unconstitutional due to other exceptions still in effect that Defendant asserts are improperly content based. (Doc. 45 at 9–12).

In *Canady v. Bridgecrest Acceptance Corp.*, a case in this District, the defendant made the same arguments—in large part word-for-word—in a Motion for Judgment on the Pleadings as the arguments raised here.[3] *See* Motion for Judgment on the Pleadings, *Canady v. Bridgecrest Acceptance Corp.*, No. 19-04738-PHX-DWL (D. Ariz. Sept. 1, 2021), ECF No. 62. In a thorough, well-reasoned order, Judge Lanza rejected each of the defendant's arguments. *Canady v. Bridgecrest Acceptance Corp.*, No. CV-19-04738-PHX-DWL, 2022 WL 194526 (D. Ariz. Jan. 21, 2022). The Court find's Judge Lanza's analysis in *Canady* highly persuasive and reaches the same conclusions.

### a. Constitutionality of the TCPA from 2015–2020

Defendant first argues that the robocall provision of the TCPA was unconstitutional from the time the government-debt exception was added in 2015 until it was severed by

---

[3] The legal standard for a motion for judgment on the pleadings is the same as the legal standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

*Barr* in July 2020. Defendant asserts that severance of an unconstitutional provision of a statute is only applicable prospectively (Doc. 45 at 6–7); that retroactive severance perpetuates content-based discrimination (Doc. 45 at 8–9); and that footnote 12 of *Barr* is nonbinding dicta endorsed by a mere plurality of the Justices (Doc. 45 at 8).

Plaintiff counters that *Barr* found only the government-debt exception, and not the entire robocall provision, unconstitutional (Doc. 52 at 6–8); that under severability principles, the Supreme Court's interpretation of the TCPA in *Barr* should be applied retroactively (Doc. 52 at 12–14); and that footnote 12 of *Barr* is not dicta and that seven Justices agreed to it (Doc. 52 at 8–12). The United States adds that the Supreme Court has held that an unconstitutional amendment to a statute is a nullity and therefore has no effect on the original statute (Doc. 60 at 9–11); that to the extent retroactive severance perpetuates content-based discrimination, it is based on fair-notice principles rather than the unconstitutional government-debt exemption itself (Doc. 60 at 16–17); and that at least forty district courts,[4] in addition to the Sixth Circuit,[5] have rejected the view advanced by Defendant, while just four district court decisions have accepted it, only two of which remain good law[6] (Doc. 60 at 11–12).

This Court agrees with Plaintiff, the United States, and the vast weight of authority—including all of the authority from this District and from other district courts in

---

[4] *See, e.g.*, *Canady*, 2022 WL 194526; *Whittaker v. WinRed Tech. Servs. LLC*, No. CV-20-08150-PCT-JJT, 2021 WL 1102297 (D. Ariz. Mar. 23, 2021); *Buell v. Credit.com, Inc.*, No. 4:21-cv-01055-KAW, 2021 WL 3271127 (N.D. Cal. July 30, 2021); *Tuso v. Nat'l Health Agents, LLC*, No. 2:20-cv-02130-JAM-CKD, 2021 WL 2534220 (E.D. Cal. June 21, 2021); *Valdes v. Nationwide Real Est. Execs., Inc.*, No. SA CV 20-01734-DOC-(JDEx), 2021 WL 2134159 (C.D. Cal. Apr. 22, 2021).

[5] *See Lindenbaum v. Realgy, LLC*, 13 F.4th 524 (6th Cir. 2021).

[6] *See Creasy v. Charter Commc'ns*, 489 F. Supp. 3d 499 (E.D. La. 2020); *Cunningham v. Matrix Fin. Servs.*, 531 F. Supp. 3d 1164 (E.D. Tex. 2021); *Lindenbaum v. Realgy, LLC*, 497 F. Supp. 3d 290 (N.D. Ohio 2020), *reversed by* 13 F.4th 524 (6th Cir. 2021); *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, 506 F. Supp. 3d 1242 (M.D. Fla. 2020). *But see Boisvert v. Carnival Corp.*, No. 8:20-cv-02076-JSM-SPF, 2021 WL 1329079, at *2 (M.D. Fla. 2020) ("Upon further reflection, the Court departs from its earlier opinion because, since the Court's Order in *Hussain*, every court faced with this same issue has concluded that a plaintiff may continue to bring § 227(b) claims post-AAPC.").

7

the Ninth Circuit—and rejects the proposition that the entirety of the TCPA's robocall provision was unconstitutional and unenforceable between 2015 and July 2020. The Court need not repeat the same analysis that has now been performed myriad times to reject a position that Defendant admits "has come to be a minority view." (Doc. 62 at 6); *see Canady*, 2022 WL 194526, at *9 (adopting the analysis and reasoning of the "[d]ozens of district courts and at least one Circuit court" that have rejected the contention that nobody can be held liable for robocalls placed between 2015 and July 2020). Plaintiff's claims will not be dismissed on this basis.

### b. Continuing Constitutionality of the TCPA

Defendant also argues that the TCPA remains unconstitutional post-*Barr* due to seven other content-based exceptions in the robocall restriction—one of which is in the statute and six of which are found in Federal Communications Commission ("FCC") regulations. (Doc. 45 at 9–10). Defendant argues that these content-based distinctions do not survive strict scrutiny and cannot be severed. (Doc. 45 at 10–12).

In response, Plaintiff argues that even if the remaining distinctions are unconstitutional, they can be severed just as the government-debt exception was in *Barr*.[7] (Doc. 52 at 15). Separately, the United States contends that this Court lacks jurisdiction to consider the validity of FCC regulations but regardless, FCC regulations under the TCPA don't affect the constitutionality of the TCPA itself. (Doc. 60 at 6–8). The United States further argues that the statutory emergency-purposes exception is content-neutral and that even if it was not, it survives strict scrutiny. (Doc. 60 at 8–9).

Taking the statutory emergency-purposes exception first, this Court agrees with *Canady* and other district court decisions[8] that the exception does not violate that First

---

[7] Plaintiff also argued that Defendant failed to timely file a notice of constitutional question pursuant to Rule 5.1 (Doc. 42 at 14–15), but that failure has since been cured and caused no prejudice.

[8] *See, e.g.*, *Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036 (N.D. Cal. 2017); *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1148–49 (D. Minn. 2017); *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 318, 321 (D. Mass. 2020).

Amendment—specifically that even if it is a content-based restriction, it satisfies strict scrutiny. To satisfy strict scrutiny, a law must be "narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Protecting the health, safety, and welfare of citizens during an emergency is undoubtedly a compelling interest, *see Rubin v. Coors Brewing Co.*, 514 U.S. 476, 485 (1995); *Am. Ass'n of Pol. Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923 F.3d 159, 170 (4th Cir. 2019) ("[E]mergency calls serve the vital purpose of protecting the safety and welfare of Americans . . . ."), as is protecting consumer privacy, *see Barr*, 140 S. Ct. at 2348. The TCPA's robocall restriction, with the emergency exception, is narrowly tailored to those ends. *See Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036, 1047 (N.D. Cal. 2017) ("Congress carefully balanced the interests in the health and safety of consumers with the interests in protecting privacy and determined the emergency call exception was carefully tailored to address both interests."). The Court will not find the TCPA's robocall restriction unconstitutional based on the emergency exception.[9]

Turning to the FCC regulatory exceptions, the court in *Canady* conducted a thorough analysis of the Hobbs Act, 28 U.S.C. § 2342(1)—which provides that "[t]he court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the FCC"—and the related law. *Canady*, 2022 WL 194526, at *4–7. The court there determined that to hold the TCPA's robocall provision unconstitutional based on FCC regulations would necessarily require consideration of the validity of the regulations, even if the end result Defendant seeks is the invalidation of the TCPA rather than the regulations. *Id.* at *5. This Court agrees in full with *Canady*'s analysis and thus shares in the conclusion that Defendant's "arguments regarding the FCC-created exceptions fall outside this Court's jurisdiction."[10] *Id.* at *7.

---

[9] Moreover, as was the case in *Canady*, Defendant makes no argument that the emergency exception alone cannot be severed from the TCPA, forfeiting any such argument. *See Canady*, 2022 WL 194526, at *8.

[10] Defendant argues that the Hobbs Act does not and cannot strip the Court of jurisdiction over constitutional claims. (Doc. 62 at 4–5). However, the Court in *Canady*

9

In its Response to the United States's Memorandum, Defendant argues that *Canady*'s analysis on the Hobbs Act issue was incorrect. (Doc. 62 at 4). It first states that "[t]he issue is not whether the FCC's exemptions and carve-outs are appropriate in a vacuum, but whether *in light of those unseverable exemptions*, the TCPA's restrictions on speech remain constitutional." (Doc. 62 at 4). Even the latter issue is squarely addressed by *Canady*, however, where the court wrote:

> To get where [the defendant] wants it to go, the Court would need to make the following determinations: (1) the TCPA qualifies as a content-based restriction on speech due to the presence of the FCC-promulgated exceptions; (2) those exceptions collectively and individually fail strict scrutiny; and (3) those exceptions cannot be severed to save the statute. It is difficult to understand how the second step of this analysis could be viewed as anything other than determining the validity of the FCC-promulgated exceptions . . . .

*Canady*, 2022 WL 194526, at *5 (internal citations and quotation marks omitted). Though Defendant attempts to circumvent the second step by urging that the Court need only consider the mere existence of the FCC regulations, its argument would require the Court to consider whether the statute and the regulations *collectively* violate the First Amendment. The Hobbs Act bars this Court from making such a determination.

Defendant goes on to make another argument: that "[t]he unevenness created by the exemptions reveals the primary issue in the TCPA: its unthinking application to lawful communications that pose no risk to the privacy concerns that animated the statute's creation." (Doc. 62 at 4). As an initial matter, this is distinct from the argument made in Defendant's Motion—that the TCPA is facially unconstitutional because it contains content-specific exceptions that do not survive strict scrutiny and cannot be severed (Doc. 45 at 9–12)—so the argument was waived. Even as to the merits, however, in *Barr*, the Supreme Court declined to hold the entire robocall restriction unconstitutional due to the

---

considered a similar concern. Although the argument "[gave] the Court . . . pause," the *Canady* court ultimately found it unpersuasive because "it *is* possible for a regulated entity that fears TCPA liability to raise a timely affirmative challenge to an FCC-created exception by seeking review in the court [of] appeals pursuant to 28 U.S.C. §§ 2342(1) and 2344." *Canady*, 2022 WL 194526, at *6.

presence of exceptions, finding that it "proscribes *tens of millions* of would-be robocalls that would otherwise occur *every day*" which "amply demonstrates Congress's continuing interest in consumer privacy." *Barr*, 140 S. Ct. at 2348. And to the extent Defendant argues that the TCPA's robocall restriction has been overbroad and unconstitutional from the time it was enacted in 1991, no court has agreed, and the Ninth Circuit long ago held it to be constitutional. *See Moser v. Fed. Commc'ns Comm'n*, 46 F.3d 970, 975 (9th Cir. 1995); *see also Barr*, 140 S. Ct. 2353. This Court likewise cannot conclude that the TCPA's robocall restriction is unconstitutional. The Motion to Dismiss the SAC will be denied.

### B. MOTION TO STRIKE CLASS ALLEGATIONS OR, IN THE ALTERNATIVE, TO STRIKE NON-ARIZONA CLASS MEMBERS' CLAIMS

Defendant separately filed a Motion to Strike (Doc. 43). Defendant moves to strike the class allegations from the SAC because the class cannot satisfy the requirements of Rule 23, or alternatively, to strike the claims of non-Arizona class members for lack of personal jurisdiction. The SAC defines the proposed class as follows:

> All persons within the United States who received any solicitation/telemarketing telephone calls from Defendant to said person's telephone made using an artificial or prerecorded voice and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

(Doc. 27 ¶ 13). Because the Court will strike the class allegations, the Court does not reach the motion in the alternative to strike the claims of non-Arizona class members.

#### i. Legal Standard

Rule 12(f) allows the Court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." The purpose of a motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotation marks omitted). A motion to strike should only be granted when "the law is clear beyond reasonable dispute" and "the relevant claim or

defense could not succeed under any set of circumstances." *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 834 (D. Ariz. 2016). A motion to strike should not be used "for the determination of disputed and substantial questions of law." *Id.* The Court must "accept the non-moving party's well-pleaded facts as true" and "draw all reasonable inferences in favor of that party." *Id.*

"Motions to strike class allegations are particularly disfavored because it is rarely easy to determine before discovery whether the allegations are meritorious." *Id.* Still, "class allegations may be stricken when it is clear from the face of the complaint that no class can be certified." *Id.* The plaintiff "bear[s] the burden of advancing a *prima facie* showing that the class action requirements in Rule 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Tomaszewski v. Circle K Stores Inc.*, No. CV-20-01569-PHX-SMB, 2021 WL 2661190, at *2 (D. Ariz. Jan. 12, 2021).

### ii. Discussion

Defendant argues that Plaintiff's proposed class is facially uncertifiable because it is (1) an improper fail-safe class, and (2) uncertifiable under Rule 23(b)(1) and 23(b)(2).

#### 1. Fail-Safe Class

A fail-safe class is one that "limit[s] membership to plaintiffs described by their theory of liability in the class definition such that the definition presupposes success on the merits." *Melgar v. CSK Auto, Inc.*, 681 F. App'x 605, 607 (9th Cir. 2017); *see also Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010) ("The fail-safe appellation is simply a way of labeling the obvious problems that exist when the class itself is defined in a way that precludes membership unless the liability of the defendant is established."). A court may strike a class definition that is fail-safe. *See Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015).

The class definition proposed by Plaintiff in this case is almost identical to the one proposed by the plaintiff in *Dixon v. Monterey Financial Services, Inc.*, No. 15-cv-03298-

MMC, 2016 WL 3456680 (N.D. Cal. June 24, 2016).[11] In *Dixon*, the court held that the proposed class was fail-safe because "defining a TCPA class to include anyone who received a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class." *Id.* at *4 (internal quotation marks and alterations omitted). Likewise, here, Plaintiff's proposed class includes only those who "had not previously consented to receiving such calls," meaning it requires a legal conclusion to determine class membership. (Doc. 27 ¶ 13). Accordingly, Plaintiff's proposed class definition is fail-safe and will be stricken. *See also Tomaszewski*, 2021 WL 2661190, at *3 (striking class allegations because they "incorporate the affirmative defense of consent"); *cf. Panacci*, 2015 WL 3750112, at *8 (denying a motion to strike because "the class definitions here do not weed out all members who will not succeed on the merits by asking the court to make findings on legal issues, such as prior consent, in determining class membership").

Plaintiff's primary argument against the Motion to Strike is that the proposed class definition is based on objective criteria. In support of this assertion, Plaintiff cites to *Olney v. Job.com, Inc.*, No. 1:12-CV-01724-LJO-SKO, 2013 WL 5476813 (E.D. Cal. Sept. 30, 2013). But even in that case, the Court found that the plaintiff's original proposed class definition—which was essentially identical to the one proposed by Plaintiff here[12]—was impermissibly fail-safe because it incorporated the consent issue. *Id.* at *10–11. Instead, the *Olney* court approved of a different proposed class definition that excluded any mention

---

[11] Specifically, the class proposed in *Dixon* was:

> All persons within the United States who received any collection telephone calls from defendant to said person's cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

*Dixon*, 2016 WL 3456680, at *4 (alteration omitted).

[12] The class definition that was rejected in *Olney* was identical to the one proposed in *Dixon* except for the omission of the word "collection." *Olney*, 2013 WL 5476813, at *10.

13

of consent as "readily determined by objective criteria." *Id.* at *11.

Defendant argues that leave to amend should be denied because Plaintiff has already amended his Complaint twice and has not shown that the deficiency can be cured. (Doc. 50 at 7). Plaintiff's previous amendments, however, addressed different issues; this is the first time the Court has found that Plaintiff's proposed class definition is fail-safe. Moreover, the deficiency may be curable. *See Olney*, 2013 WL 5476813, at *10–11. Thus, Plaintiff will be given leave to amend.

### 2. Rule 23(b)

To maintain a class action, the class must satisfy at least one of Rule 23(b)'s three prongs. Defendant argues that Plaintiff's proposed class is uncertifiable under two of those prongs, Rule 23(b)(1) and (2), but does not argue that the class is uncertifiable under Rule 23(b)(3).[13] (*See* Doc. 43 at 2 ("[T]he Court should also strike Plaintiff's class allegations given that the proposed class as defined cannot be certified under either Rule 23(b)(1) or (2) because Plaintiff predominately seeks monetary relief.")). Having waived any argument that the class is facially uncertifiable under Rule 23(b)(3), Defendant fails to show that the class allegations "could not succeed under any set of circumstances" with respect to Rule 23(b). *Cheatham*, 161 F. Supp. 3d at 834. The Court need not address the merits of Defendant's Rule 23(b)(1) and (2) arguments, then, because the waiver of any argument as to Rule 23(b)(3) is a sufficient basis to reject them at this early stage.[14]

///

///

---

[13] Perhaps Defendant intended to argue on this issue that the Court should strike only injunctive allegations for a class under Rule 23(b)(1) or (2), rather than the class allegations as a whole. Regardless, Defendant cites no authority to suggest that the Court should parse the class allegations in such a manner at the pleading stage. Instead, as Plaintiff highlights, Defendant relies on cases in which the court was deciding whether to certify a class. (Doc. 47 at 7–8). Issues regarding whether Plaintiff can satisfy the specific requirements of Rule 23(b) will be decided at the class certification stage. *See Canady v. Bridgecrest Acceptance Corp.*, No. CV-19-04738-PHX-DWL, 2022 WL 279576, at *3 (D. Ariz. Jan. 31, 2022).

[14] In any event, at minimum, the SAC makes a *prima facie* showing that Rule 23(b)(3) is satisfied. (*See* Doc. 27 ¶¶ 18, 21).

### III. CONCLUSION

Having considered the pending Motions, the Court finds that the TCPA's robocall restriction was not and is not unconstitutional and thus that the SAC states a claim over which this Court has subject matter jurisdiction. The Court further finds that it is the interest of the orderly course of justice for this case to proceed at this time. Nevertheless, the Court finds that the SAC proposes an improper fail-safe class and thus will strike the class allegations with leave to amend.

**IT IS THEREFORE ORDERED:**

1. That Defendant's Motion to Dismiss the Second Amended Complaint or, in the Alternative, to Stay Pending the Ninth Circuit's Review of *Chennette* (Doc. 45) is **denied**;

2. That Defendant's Motion to Strike Class Allegations or, Alternatively, to Strike Non-Arizona Class Members' Claims (Doc. 43) is **granted**;

3. That the class allegations in Plaintiff's Second Amended Complaint (Doc. 27) are **stricken**;

4. That Plaintiff may file a Third Amended Complaint for the purpose of amending the class allegations no later than **March 31, 2022**; and

5. That Defendant shall file a responsive pleading pursuant to Rule 12 no later than **two weeks** after Plaintiff files a Third Amended Complaint or, if plaintiff does not file a Third Amended Complaint, by **April 14, 2022**.

Dated this 17th day of March, 2022.

Honorable Steven P. Logan
United States District Judge